Daniel T. Pascucci (SBN 166780)
Joseph R. Dunn (SBN 238069)
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
3580 Carmel Mountain Road, Suite 300
San Diego, CA  92130
Telephone:  (858) 314-1500
Facsimile:   (858) 314-1501

Attorneys for Creditor
TATUNG COMPANY, LTD.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>RICHARD YIN-CHING HOUNG aka RICHARD HOUNG,<br><br>Debtor. | Case No. 8:10-bk-18712-ES<br><br>Chapter 7<br><br>**CREDITOR TATUNG COMPANY, LTD.'S OBJECTION TO CHAPTER 7 TRUSTEE'S REPORT OF NO DISTRIBUTION; AND REQUEST FOR STATUS CONFERENCE**<br><br>Courtroom:  5A<br>The Hon. Erithe A. Smith |

Creditor Tatung Company, Ltd. ("Tatung") hereby objects to the Report of No Distribution (the "Report") filed by Weneta M. Kosmala, the chapter 7 trustee (the "Trustee") of the bankruptcy estate of Richard Yin-Ching Houng (the "Debtor").  The Declaration of Joseph R. Dunn (the "Dunn Decl.") in support of this Objection is filed concurrently herewith.

**I.**

**INTRODUCTION**

Soon after the Debtor commenced his chapter 11 case in 2010, it quickly became clear that the estate was comprised of millions of dollars of assets, including a condominium in Taiwan and valuable shares of stock producing dividends of over $175,000 per year.  The Debtor, a known fraudster, sought to maintain control of his assets, refusing to disclose information regarding their value and instead seeking to confirm a chapter 11 plan with only limited information to creditors.

1

Ultimately, the Court rejected the Debtor's games and converted the case to ensure an independent fiduciary would take control of those assets and preserve their value for the estate.

Now, over six years after the Trustee was appointed to take control of those assets, it appears the Trustee has failed marshal or liquidate *a single asset* for the benefit of creditors. Instead, the Trustee seeks to close this case, without explanation, as a no-asset case. In light of the Debtor's substantial assets at the time of the Trustee's appointment, and the significant amounts owed to creditors, including Tatung, the Court and creditors are entitled to a full report regarding the administration of the estate and its assets prior to the closure of this case. Specifically, the Trustee should be required to submit a formal status report addressing the issues raised herein and fully explaining the administration of estate assets prior to closure of this case.

## II.

## FACTUAL BACKGROUND

### A.   Tatung's Claim

Tatung holds the largest unsecured claim against the Debtor's estate. *See generally* Official Claims Register.[1] Tatung's claim is based on a judgment (the "Judgment") entered by the Orange County Superior Court against the Debtor on December 12, 2012. Official Claims Register, Claim No. 6, at Ex. 1. The amount presently owed by the Debtor under the Judgment exceeds $41,000,000, including post-judgment interest.[2] Dunn Decl., at ¶ 2. Since entry of the Judgment, the Debtor has not made any voluntary payments on account of the Judgment.[3] *Id*.

### B.   Commencement and Conversion of the Debtor's Case

On June 25, 2010, the Debtor commenced this case by filing a voluntary petition for relief

---

[1] The Claims Register reflects only three significant unsecured claims against the estate, which were filed by Tatung, Zenith Electronics LLC ("Zenith"), and Darwin Chang. *See generally* Official Claims Register; *see also* Claim No. 8 (Zenith claim for $79,042,915); Claim No. 9 (Chang claim for $8,341,566). On September 30, 2013, Zenith and the Debtor stipulated to entry of a nondischargeable judgment in the amount of $7,500,000 and to reduction of Zenith's proof of claim to such amount. [Adv. No. 8:10-ap-01466-ES, Dkt. 111, at ¶¶ 10-11] On November 23, 2011, the Court approved a settlement between the estate and Mr. Chang pursuant to which Mr. Chang would have an allowed claim in the amount of $400,000, but would not receive a distribution from the Debtor's estate. [Dkt. 178]

[2] On January 5, 2011, Tatung filed a proof of claim in this case for an unsecured claim in the amount of $21,962,034.00, before interest (the "Proof of Claim"), and reserved its right to amend the Proof of Claim at any time. Official Claims Register, Claim No. 6. No objection was filed to Tatung's Proof of Claim. *See generally* docket.

[3] On August 1, 2012, this Court entered judgment that the amounts owed to Tatung under the Judgment are not dischargeable. Adv. Proc. No. 8:10-ap-01467-ES, Dkt. 124. The judgment of nondischargeability was affirmed by the U.S. Court of Appeals for the Ninth Circuit on January 11, 2016. [9th Cir. Case No. 13-56656, Dkt. 40]

under chapter 11 of the Bankruptcy Code. [Dkt. 1] The Debtor's original schedules identified only limited nonexempt assets, including bank accounts containing approximately $30,000 and a "[l]oan receivable from RH Holdings LLC"[4] in the amount of $393,814. [Dkt. 11, at pp. 5, 6]

On November 1, 2010, the Debtor amended his schedules to add additional assets, including a bank account in Taiwan with a balance of approximately $10,000 and shares of stock of several companies, including 2,698,459 shares of stock of Chi Mei Corporation (a 0.15% interest), 577,540 shares of stock of Chi Mei Trading Co., Ltd. (a 1.28% interest), 274,138 shares of stock of Chi Lin Technology Co., Ltd. (a 0.08% interest), 1,445,000 shares of stock of Li Fu Investment Company, Ltd. (an 8.22% interest), and 43,900 shares of stock of China Development Financial Holdings Corporation (a 0.00039% interest). [Dkt. 53, at p. 3] The Debtor stated that the value of these shares was unknown, except for his shares of China Development Financial Holdings Corporation, which he valued at $13,000. *Id.*

Subsequently, in connection with his efforts to confirm a chapter 11 plan, the Debtor filed a series of disclosure statements revealing additional valuable assets, including a condominium located in Taiwan and valued by the Debtor at $407,920, and $140,000 in cash and funds in bank accounts. [Dkt. 131, at 18:13-17, 22:5-6] In addition, the Debtor valued the shares of stock disclosed in his amended schedules at approximately $310,000. *Id.* at 19:4-5, 19:26-27, 20:6-7, 20:13-14, 23:22-28. The Third Amended Disclosure Statement (the "Disclosure Statement") further indicated the Debtor had been paid hundreds of thousands of dollars in dividends on account of these shares, including during his bankruptcy case, and that it was likely future dividends would be paid on account of certain shares. *Id.* at 19:17-21, 19:28-20:1, 20:8-10, 20:22-24.

Due to a series of objections by Tatung and other creditors, the Court declined to approve the Debtor's various disclosure statements, finding the Debtor had failed to provide adequate information regarding the nature and value of his assets. For example, at the hearing on the Second Disclosure Statement, the Court observed:

> There are aspects of this case that causes one to really wonder what's going on. I don't know that the debtor has anything nefarious going on, but by the non-disclosure, it causes one to think what's missing here. Because I get the impression there are huge pieces of the puzzle

---

[4] RH Holdings LLC was owned by the Debtor. [Adv. No. 8:12-ap-01357-ES, Dkt. 1, at ¶ 3]

> that just aren't there . . . You can see where this is going. If the debtor doesn't have a handle on his assets and he can't get a handle on his assets, then the next step of course is, well, then, we'll have to get somebody in to find out what those assets are and how valuable they are or not.

[Dkt. 141, Ex. A, at 3:12-17 and 9:8-14] Following the Debtor's failure to address these deficiencies, the Court refused to approve the Debtor's Disclosure Statement, and the Debtor's case was converted to one under chapter 7. [Dkt. 159]

**C.    Events Following Conversion of the Case**

Following her appointment, it appears the Trustee did not take control of the significant assets disclosed by the Debtor in his Disclosure Statement and his schedules. Indeed, a review of the docket in the case reflects surprisingly little action by the Trustee, much less disclosure of information regarding what has become of the estate's assets.

For instance, with respect to the $140,000 in cash listed in the Disclosure Statement, it appears the Trustee simply did not obtain these funds from the Debtor. *See* Dkt. 317 and Jan. 11, 2018 docket entry (indicating Trustee had collected funds of approximately $4,000 over the course of this case). It is currently unknown what became of these funds.

With respect to the Debtor's condominium in Taiwan, the Trustee retained special counsel and a real estate broker in Taiwan to determine if the Debtor's valuation of the property was accurate and to market and sell the property. [Dkts. 244, 264] These professionals determined the condominium should be listed for approximately $930,000, meaning the estate would receive net sale proceeds of approximately $520,000 after payment of secured debt and costs of sale. [Dkt. 258, at 3:7-16] However, it appears the Trustee did not sell the condominium and the estate received no funds from this valuable asset. *See* Report.

It is equally unclear what has transpired with respect to the various shares of stock owned by the Debtor (and the accompanying dividends). The Trustee filed an adversary proceeding against Taishin International Bank Co., Ltd. ("Taishin") to avoid and recover the Debtor's pledge of 2,500,000 shares of stock of Chi Mei Corporation to Taishin in connection with a loan made to Li Fu Investment Company Ltd. [Adv. No. 8:12-ap-01358-ES, Dkt. 1] On or about December 14, 2016, the Trustee and Taishin entered into a settlement whereby Taishin agreed to relinquish its

4

claim on the pledged stock and to release the shares into the custody of the Taiwanese courts. [Dkt. 312, at 5:1-4] Despite this settlement, the Trustee apparently never obtained control of these shares. *See* Report.

In addition, the Trustee filed a turnover motion on July 16, 2015, in which she represented Chi Mei Corporation was holding a dividend in the amount of $90,041.68 on account of the Debtor's shares of its stock, and was "willing to pay the 2014 Divided [sic] to the Estate (and any future dividends on account of the Shares) upon an order of this Court directing it to do so." [Dkt. 282, at 2] In the turnover motion, the Trustee also sought an order directing Chi Mei Corporation to provide an accounting for over $400,000 in dividends paid to the Debtor by Chi Mei Corporation from 2010 through 2013, which dividends the Debtor did not turn over to the Trustee. *Id.* On November 13, 2015, the Court entered an order granting the Trustee's motion. [Dkt. 285] However, the Trustee apparently never received any payments from Chi Mei Corporation.[5] *See* Report. It is also unknown what became of the other stocks owned by the Debtor.

**D.    The Debtor's Apparent Scheme to Fraudulently Transfer Estate Assets**

In June 2016, a full five years after the case was converted and the Trustee had apparently still failed to take control of these estate assets, the Trustee filed a *Motion for Order (1) Compelling the Debtor to Cooperate with the Trustee Pursuant to 11 U.S.C. § 521 and (2) Requiring Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542* (the "Cooperation Motion"). [Dkt. 293] In response to the Cooperation Motion, the Debtor filed a declaration stating a Taiwanese court had entered a judgment against him in favor of Chi Mei Trading Co. ("CMT"), and all of his assets would be seized by CMT to satisfy the judgment. [Dkt. 299] CMT, which was not listed as a creditor on the Debtor's schedules and did not file a proof of claim [Dkts. 11, 54, 56], is a large Taiwanese company owned and operated by the Debtor and his family members – a fact known to the Trustee. Indeed, the Trustee noted in connection with the Cooperation Motion that the CMT judgment and asset seizure were likely a scheme orchestrated by the Debtor and his family to

---

[5] In addition to these efforts to recover assets identified in the Disclosure Statement and schedules, the Trustee also filed two adversary proceedings asserting preferential and fraudulent transfer claims against Nexcast, LLC and WDE Solutions, Inc., which are affiliates of the Debtor. [Adv. No. 8:12-ap-01357-ES, Dkt. 1; Adv. No. 8:12-ap-01359-ES, Dkt. 1] Although the Trustee obtained default judgments against both defendants (including a $19 million judgment

5

1  prevent the Trustee from liquidating the Debtor's assets for the benefit of the estate.[6]  [Dkt. 300, at

2  3:28-4:3]

3        The Court granted the Cooperation Motion on August 2, 2016 [Dkt. 303] and the Trustee

4  subsequently retained counsel in Taiwan to investigate the alleged CMT judgment and assist the

5  Trustee with liquidating the assets located in Taiwan.  [Dkts. 307, 309]  Since filing the Cooperation

6  Motion and retaining Taiwanese counsel, however, the Trustee has not provided any information to

7  the Court regarding the status of her investigation, her efforts regarding the CMT judgment, or her

8  efforts to liquidate the Debtor's valuable assets (including those being pursued by CMT) for the

9  benefit of the estate.

10  **E.  The Trustee's Sudden Filing of the Report Following Her Refusal to Communicate with Creditors Regarding Administration of the Estate**

11        Since conversion of this case in 2011, Tatung's counsel has repeatedly offered to assist the

12  Trustee in her efforts to investigate and liquidate the Debtor's assets in Taiwan by sharing

13  information Tatung had gathered about the Debtor and the companies operated by the Debtor's

14  family (including CMTC) through its own investigative efforts.  Dunn Decl. ¶¶ 3-6 and Exs. A and

15  B.  During this period, Tatung frequently requested updates from the Trustee's counsel regarding

16  the investigation and liquidation of the Debtor's assets.  *Id*. at ¶¶ 4, 7-8 and Ex. C and D.  Most

17  recently, in October 2017, when the Trustee filed a notice of intent to abandon $4,057.29 in funds

18  [Dkt. 317], Tatung's counsel requested information from Trustee's counsel regarding the status of

19  the estate's assets.  *Id*. at ¶ 7 and Ex. C.  Shockingly, the Trustee's counsel stated in response that all

20  estate assets had been taken by CMT (the Debtor and his family's company), and that the Trustee

21  believed there was nothing that could be done.  *Id*.  Tatung insisted on – and was repeatedly

22  promised – a more fulsome explanation regarding the alleged taking of estate assets.  *Id.* at ¶ 8 and

---

against Nexcast, LLC), it is unclear what efforts, if any, were made to enforce or otherwise monetize these judgments. [*See* Adv. No. 8:12-ap-01357-ES, Dkt. 90; Adv. No. 8:12-ap-01359-ES, Dkt. No. 53]

[6] When the Debtor filed his Declaration regarding the alleged CMT judgment and CMT's plans to enforce the judgment against estate assets, counsel for Tatung quickly reached out to the Trustee's counsel. Dunn Decl. ¶ 6 and Ex. B. At that time, Tatung was prosecuting RICO claims against CMT and others affiliated with the Debtor for its participation in the fraudulent scheme that gave rise to Tatung's Judgment against the Debtor. *See Tatung Company, Ltd. v. Hsu, et al.*, C.D. Cal. case no. 13-cv-01743-DOC.  Tatung's counsel informed the Trustee's counsel of the Debtor and his family's ownership and control of CMT and repeatedly offered Tatung's assistance in combatting any attempt by CMT to pursue estate assets, particularly given the extensive investigation and discovery already carried out by Tatung in its litigation against CMT. Dunn Decl. ¶ 6 and Ex. B. Tatung's offers to assist went unanswered. *Id.*

6

Ex. D.  Instead of providing the promised explanation, on January 11, 2018 – without notice to Tatung – the Trustee filed the Report, merely stating:

> I collected funds totaling $4057.29.  After making diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate, I have determined that there are insufficient assets to administer.  All funds have been returned.  All bank statements and canceled checks, if any, have been submitted to the United States Trustee.  The bank statements reflect a final zero balance and no other funds or assets of the estate remain in my custody.  Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered.  I request that I be discharged from my duties as trustee. . . . Assets Abandoned (without deducting any secured claims): $751767.82, Assets Exempt:  $170427.34, Claims Scheduled: $16720358.01, Claims Asserted:  Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $16720358.01,. [sic]

*See* Jan. 11, 2018 docket entry.

## III.

## ARGUMENT

Bankruptcy Code section 704(a) identifies various duties of a chapter 7 trustee, including the duty to file a final report and a final account of the administration of the estate.  11 U.S.C. § 704(a)(9).  "The very purpose of a final accounting is to insure that trustees disclose and be held accountable for their handling of the estate."  *Lopez-Stubbe v. Rodriguez-Estrada (In re San Juan Hotel Corp.)*, 847 F.2d 931, 939 (1st Cir. 1988); *see also Cieciorka v. Parker (In re Leonis)*, No. EC-16-1254-JuTaB, 2017 Bankr. LEXIS 1542, at *9-10 (B.A.P. 9th Cir. Mar. 23, 2017) (citing *Lopez-Stubbe*).[7]

The notice requirements for a chapter 7 trustee's final report and account are dictated by Federal Rule of Bankruptcy Procedure ("Rule") 5009(a), which provides:

> If in a chapter 7 . . . case the trustee has filed a final report and final account and has certified that the estate has been fully administered, and if within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered.

---

[7] In accordance with Local Rule 9013-2(b)(4), all unpublished decisions and orders cited herein are attached hereto as exhibits.

Upon receipt of an objection to a final report, the "proper scope of the Court's inquiry" is "whether the Chapter 7 estate has been 'fully administered.'" *In re Law Firm of Frank R. Bayger, P.C.*, No. 02-11538 K, 2014 Bankr. LEXIS 3047, at *2 (Bankr. W.D.N.Y. July 16, 2014). However, neither the Bankruptcy Code nor the Bankruptcy Rules explain when a case is "fully administered." *In re Hart*, 76 B.R. 774, 776 (Bankr. C.D. Cal. 1987); *In re Avery*, 272 B.R. 718, 726 (Bankr. E.D. Cal. 2002). "Therefore, the contours of the phrase are shaped by the duties imposed on trustee." *Avery*, 272 B.R. at 726 (analyzing whether chapter 13 case was fully administered). Thus, when a creditor identifies an "unpaid creditor, unadministered asset, or unperformed requirement for case completion," the bankruptcy court's reliance "on the Final Report's certification of full administration" would be "erroneous[]." *Hujazi v. Wirum (In re N. Oxford Bright Horizons Group LLC)*, No. NC-14-1030-TaDKi, 2015 Bankr. LEXIS 1748, at *10 (B.A.P. 9th Cir. May 22, 2015). Accordingly, if "the Chapter 7 Trustee overlooked an asset needing administration[,] . . . failed to disburse all of the estate funds[, or] left a motion or an adversary proceeding pending" the estate has not been fully administered. *Bayger*, 2014 Bankr. LEXIS 3047, at *2.

In this case, notwithstanding the boilerplate Report filed by the Trustee, serious questions remain outstanding regarding the administration of the significant assets of the Debtor's estate. The Report fails to account for $140,000 in cash, an apartment valued by the Trustee's broker at $930,000, shares of stock of five companies worth over $300,000, a $400,000 account receivable, four years of dividends (of approximately $100,000 annually) that this Court ordered to be paid to the Trustee, and two judgments totaling at least $19 million. Indeed, it is perplexing that the Trustee seeks to close this case as a no-asset case *without explanation* – six years after conversion – when a fiduciary was appointed specifically to take control of these significant estate assets.

Creditors, including Tatung and Zenith, are owed enormous sums by the Debtor and undertook sustained efforts to obtain conversion of the case so the Trustee could investigate, safeguard and liquidate the Debtor's significant assets for their benefit. Yet, based on the documents filed in the case, it appears the Trustee failed to accomplish this fundamental task. Under these circumstances, the Report is insufficient to demonstrate the estate was fully

administered as required by Rule 5009 and 11 U.S.C. § 350(a).  At a minimum, creditors and this Court are entitled to a full and formal explanation of the failure to collect and liquidate millions of dollars of estate assets pursuant to her statutory duties.  *See* 11 U.S.C. §§ 704(a)(1), (2), (4), (7) (requiring chapter 7 trustee to "collect and reduce to money the property of the estate," "be accountable for all property received," "investigate the financial affairs of the debtor," and "furnish such information concerning the estate and the estate's administration as is requested by a party in interest.").

## IV.

## CONCLUSION

For the reasons set forth above, Tatung's objection to the Trustee's Report should be sustained and the Debtor's case should not be closed.  At a minimum, Tatung requests the Court enter an order (a) directing the Trustee to file a detailed status report addressing the issues raised herein pursuant to 11 U.S.C. § 704(a)(7), and (b) setting a status conference regarding the Report, closure of the case, and the issues raised herein.

Dated:  February 12, 2018

/s/ Joseph R. Dunn
Joseph R. Dunn
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
Attorneys for Creditor
TATUNG COMPANY

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 2029 Century Park East, Suite 3100, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*):
**CREDITOR TATUNG COMPANY, LTD.'S OBJECTION TO CHAPTER 7 TRUSTEE'S REPORT OF NO DISTRIBUTION; AND REQUEST FOR STATUS CONFERENCE**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 12, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

SEE SERVICE LIST ATTACHED.

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) February 12, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

SEE SERVICE LIST ATTACHED.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 12, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Overnight Mail**

PRESIDING JUDGE'S COPY:
Honorable Erithe A. Smith
United States Bankruptcy Court
Central District of California
411 W. Fourth Street, Suite 5040
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 12, 2018 | Diane Hashimoto | /s/ Diane Hashimoto |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

**SERVICE LIST BY NEF**

- **Shawna V Benfield**    sbenfield@cooley.com, ywaldronrobinson@cooley.com
- **Mark Bradshaw**    mbradshaw@shbllp.com, sswartzell@shbllp.com;rhodges@shbllp.com
- **Cathrine M Castaldi**    ccastaldi@brownrudnick.com
- **Daniel Denny**    ddenny@gibsondunn.com
- **Joseph R Dunn**    jrdunn@mintz.com, docketing@mintz.com;tlmayo@mintz.com;SARamuta@mintz.com
- **Robert L Eisenbach**    reisenbach@cooley.com
- **Alan J Friedman**    afriedman@lwgfllp.com, lgauthier@lwgfllp.com
- **Beth Gaschen**    bgaschen@wgllp.com, kadele@wgllp.com;lgauthier@lwgfllp.com
- **Jeffrey I Golden**    jgolden@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com
- **Nancy S Goldenberg**    nancy.goldenberg@usdoj.gov
- **Christopher J Green**    cgreen@bohmwildish.com, chrisgreen@ucla.edu;christopher-green-2815@ecf.pacerpro.com;lrivara@bohmwildish.com
- **D Edward Hays**    ehays@marshackhays.com, ecfmarshackhays@gmail.com
- **John J Immordino**    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- **Jeffrey S Kaufman**    JSKaufman@wolfewyman.com, rsnichols@wolfewyman.com,kabeall@wolfewyman.com
- **Rika Kido**    rkido@shbllp.com, avernon@shbllp.com;ecf.filings@shbllp.com
- **Weneta M Kosmala (TR)**    ecf.alert+Kosmala@titlexi.com, wkosmala@txitrustee.com;dmf@txitrustee.com;kgeorge@kosmalalaw.com
- **Duane Kumagai**    dkumagai@klgla.com, mshabpareh@klgla.com
- **Asya Landa**    ecfcca@ecf.courtdrive.com
- **David A Lee**    dlee@wgllp.com
- **Thomas A. Lee 2**    notices@becket-lee.com
- **Robert S Marticello**    Rmarticello@swelawfirm.com, csheets@swelawfirm.com;gcruz@swelawfirm.com;hdavis@swelawfirm.com
- **Samuel A Newman**    snewman@gibsondunn.com
- **Lee S Raphael**    ecfcca@ecf.courtdrive.com
- **Ronald Rus**    rrus@rusmiliband.com
- **Nanette D Sanders**    becky@ringstadlaw.com
- **Nada I Shamonki**    nshamonki@mintz.com, docketing@mintz.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- **Leonard M Shulman**   lshulman@shbllp.com

- **Martina A Slocomb**   rockymountainlaw@yahoo.com

- **Autumn D Spaeth**   aspaeth@swelawfirm.com, gcruz@swelawfirm.com;csheets@swelawfirm.com;hdavis@swelawfirm.com

- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov

- **Charles C H Wu**   cchwu@wclawyers.com, vreddy@wclawyers.com;tluong@wclawyers.com;tphillip@wclawyers.com

- **Joseph S Wu**   jwu@usasialaw.com

**SERVICE LIST BY U.S. MAIL**

Jon R Parsons
2501 Park Blvd Ste 207
Palo Alto, CA 94306

Ricardo Rodriguez
Cooley LLP
Five Palo Alto Sq
3000 El Camino Real
Palo Alto, CA 94306-2155

Van Etten Suzumoto & Sipprelle LLP
2801 Townsgate Road Ste 210
Westlake Village, CA 91361

Richard Yin-Ching Houng
20 Early Light
Irvine, CA 92620

75469715v.3

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**